# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOBI HERBERT,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>HOWMEDICA OSTEONICS CORPORATION d/b/a Stryker Orthopaedics, a New Jersey corporation; STRYKER CORPORATION, a Michigan corporation; and DOES 1-100, inclusive,<br><br>　　　　　　　　　　Defendants. | Case No.: 3:17-cv-01697-H-KSC<br><br>**ORDER:**<br><br>**(1) SUBMITTING MOTION ON THE BRIEFS; and**<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 10.] |

On October 16, 2017, Plaintiff Tobi Herbert ("Plaintiff") filed a First Amended Complaint ("FAC") alleging four causes of action for negligence and strict liability against Defendants Howmedia Osteonics Corporation ("Howmedica") and Stryker Corporation ("Stryker"). (Doc. No. 8, First Amended Complaint.) On October 30, 2017, Howmedica moved to dismiss the FAC for failure to state a claim, and Stryker moved to dismiss the claims against it for lack of personal jurisdiction. (Doc. No. 10.) See Fed. R. Civ. P 12(b)(2), (6). On January 8, 2018, Plaintiff filed an opposition to Howmedica's motion,

but voluntarily dismissed its claims against Stryker.[1] (Doc. Nos. 13, 14.) Howmedica filed a reply on January 12, 2018.[2] (Doc. No. 15.)

For the reasons articulated below, the Court grants and part and denies in part Howmedica's motion to dismiss.

## Background

This diversity action arises out of a hip replacement surgery Plaintiff Tobi Herbert received at Sharp Coronado Hospital on June 19, 2012. (Doc. No. 8 at ¶ 15.) During her surgery, Plaintiff was implanted with four devices manufactured by Howmedica: "(1) a Restoration ADM anatomic dual mobility acetabular cup; (2) an Accolade II 127 degree neck angle hip stem; (3) a Restoration ADM insert; and (4) a Biolox delta ceramic V40 head." (Id. at ¶ 16.) After the surgery, Plaintiff "suffered from left hip pain, discomfort, [and] immobility," necessitating a revision surgery on February 24, 2016. (Id. at ¶¶ 17, 19.) The revision surgery revealed "black staining," "thick gelatinous joint fluid" and a cyst in Plaintiff's hip caused by "metallosis due to" two of Howmedica's devices improperly contacting one another. (Id. at ¶¶ 20–23.)

Plaintiff alleges that Howmedica's devices contain various design and manufacturing defects such that, when used together, the devices rapidly degrade, causing metallosis and related health problems in patients. (Id. at ¶¶ 24–30.) She seeks damages for her personal injuries, as well as medical expenses and other costs. (Id. at 11.)

## Discussion

**I.    Legal Standards**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

---

[1]    Because Plaintiff has voluntarily withdrawn its claims against Stryker—an action that did not require an order from the Court because Stryker has not filed either an answer or a motion for summary judgment, see Fed. R. Civ. P. 41(a)(1)(A)(i)—the Court denies Stryker's motion to dismiss for lack of personal jurisdiction as moot.
[2]    A hearing on the motion is currently scheduled for January 22, 2018. Pursuant to its discretion under Civil Local Rule 7.1(d)(1), the Court determines the matter to be appropriate for resolution without oral argument, submits it on the papers, and vacates the motion hearing.

sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014). But a court need not accept "legal conclusions" as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Further, it is improper for a court to assume the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). In addition, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).

If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). "'A district court may deny a plaintiff leave to amend if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (internal quotation marks and citations omitted).

## II. Analysis

Plaintiff's FAC asserts one simple negligence claim, and three strict liability claims against Howmedica. (Doc. No. 8.) The parties agree that these claims are governed by California law. The Ninth Circuit has explained that:

> "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." Gee v. Tenneco, Inc., 615 F.2d 857, 861 (9th Cir. 1980); accord U.S. Fidelity and Guaranty Co. v. Lee Investments LLC, 641 F.3d 1126, 1133 (9th Cir. 2011) ("Perhaps a better way of putting it is to say that one of the goals in deciding state law questions is to do no harm to state jurisprudence."). "[F]ederal courts are bound by the pronouncements of the state's highest court on applicable state law." Ticknor v. Choice Hotels, Inc., 265 F.3d 931, 939 (9th Cir. 2001). Similarly, a federal court is "not free to reject a state judicial rule of law merely because it has not received the sanction of the state's highest court, but it must ascertain from all available data what the state law is and apply it." Estrella v. Brandt, 682 F.2d 814, 817 (9th Cir. 1982). "An intermediate state appellate court decision is a 'datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" Id. at 817 (quoting West v. A.T.&T. Co., 311 U.S. 223, 237 (1940)); see also Lewis v. Tel. Empl. Credit Union, 87 F.3d 1537, 1546 (9th Cir. 1996) (citing In re Kirkland, 915 F.2d 1236, 1239 (9th Cir. 1990) to recognize that ". . . where there is no convincing evidence that the state supreme court would decide differently, 'a federal court is obligated to follow the decisions of the state's intermediate appellate courts'").

Kwan v. SanMedica Int'l, 854 F.3d 1088, 1093 (9th Cir. 2017); accord Pulte Home Corp. v. Am. Safety Indem. Co., 264 F. Supp. 3d 1073, 1077–78 (S.D. Cal. 2017).

Howmedica argues that each of Plaintiff's claims either do no state a plausible theory for relief, or else suffer from fatal legal defects. (Doc. No. 10 at 1.) Plaintiff argues that the FAC gives Howmedica adequate notice as to each of Plaintiff's theories of relief. (Doc. No. 13 at 3.) The Court evaluates each of Plaintiff's claims in turn.

**A. Negligence**

Plaintiff's first claim alleges that Howmedica was negligent in failing "to adequately design and manufacture the devices to ensure when they were used together they would not fret, corrode, erode, deteriorate and induce metal toxicity in patients." (Doc. No. 8 at ¶ 30(a).) In order to state a claim for the negligent design or manufacture of a product, the plaintiff must plead that: (i) she was injured by the defendant's product; (ii) the product was defective; and (iii) "the defect in the product was due to the negligence of the defendant." Merrill v. Navegar, Inc., 26 Cal. 4th 465, 479 (2001) (quoting William Prosser, *Strict Liability to the Consumer*, 18 Hastings L.J. 9, 50–51 (1966)); Chavez v. Glock, Inc., 207 Cal. App. 4th 1283, 1304–05 (2012). A Plaintiff establishes a defendant's negligence by showing "breach of duty, causation, and damages." Howard v. Omni Hotels Mgmt. Corp., 203 Cal. App. 4th 403, 428 (2012). The duty of care for products negligence claim is as follows:

> A [designer/manufacturer/etc.] is negligent if [it] fails to use the amount of care in [designing manufacturing/etc.] the product that a reasonably careful [designer/manufacturer/etc.] would use in similar circumstances to avoid exposing others to a foreseeable risk of harm.
>
> In determining whether [the defendant] used reasonable care, [a jury must] balance what [the defendant] knew or should have known about the likelihood and severity of potential harm from the product against the burden of taking safety measures to reduce or avoid the harm.

California Civil Jury Instruction No. 1221. "Therefore, a product is not negligently designed so long as 'the manufacturer took reasonable precautions in an attempt to design a safe product or otherwise acted as a reasonably prudent manufacturer would have under the circumstances.'" Mariscal v. Graco, Inc., 52 F. Supp. 3d 973, 991 (N.D. Cal. 2014) (quoting Barker v. Lull Eng'g Co., 20 Cal. 3d 413, 434 (1978)).

Howmedica argues that Plaintiff's negligence claim is insufficiently pled because the FAC fails to identify which of the four devices implanted in Plaintiff was defective. (Doc. No. 10 at 10.) The Court disagrees. The FAC alleges that: (i) when "used together" Howmedica's "Restoration ADM anatomic dual mobility acetabular cup," "Accolade II 127 degree neck angle hip stem," "Restoration ADM insert," and "Biolox delta ceramic

V40 head" "fret[ted], corrode[d], erode[d], deteriorate[d] and induce[d] metal toxicity in patients," (Doc. No. 8 at ¶¶ 28, 30(a)); (ii) these devices corroded while inside of Plaintiff's hip, causing "her continuous pain, discomfort and metallosis," (id. at ¶¶ 28–29); and (iii) the devices malfunctioned when used together because Howmedica "failed to adequately test its devices to insure that they would" function appropriately. (Id. at ¶ 30(c).) These allegations satisfy the requirement elements of a products negligence claim. See Merrill, 26 Cal. 4th at 479. The allegations also give Howmedica adequate notice as to Plaintiff's theory of relief: namely, that the devices were negligently designed such that when used together, they caused metallosis and related injuries to Plaintiff. The Court therefore declines to dismiss Plaintiff's negligence claim.

**B. Strict Liability–Failure to Warn**

Plaintiff's second claim alleges that Howmedica's devices "contained no warnings, or in the alternative, contained inadequate warnings as to the risk that the product could cause metal cast-off, fretting, corrosion and significant metal toxicity." (Doc. No. 8 at ¶ 38.) Plaintiff alleges that had she, "or her surgeon, received proper or adequate warnings as to the rsisk associated with using Defendants' devices, Plaintiff would not have agreed to be implanted with Defendants' products." (Id. ¶ 40.)

Under California law, "manufacturers have a duty to warn consumers about the hazards inherent in their products. The requirement's purpose is to inform consumers about a product's hazards and faults of which they are unaware, so that they can refrain from using the product altogether or evade the danger by careful use." Johnson v. Am. Standard, Inc., 43 Cal. 4th 56, 64 (2008) (citations omitted); accord Chavez, 207 Cal. App. 4th at 1304. "Typically," California courts "hold manufacturers strictly liable for injuries caused by their failure to warn of dangers that were known to the scientific community at the time they manufactured and distributed their product." Johnson, 43 Cal. 4th at 64. "To establish strict liability for failure to warn, the plaintiff must prove the defendant 'did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time

manufacture and distribution . . . [T]he reasonableness of the defendant's failure to warn is immaterial.'" Chavez, 207 Cal. App. 4th at 1304 (quoting Anderson v. Owens–Corning Fiberglass Corp., 53 Cal. 3d 987, 1002–03 (1991)).

Howmedica argues that Plaintiff's failure to warn claim must be dismissed because the FAC "does not explain how the warnings for particular component were inadequate." (Doc. No. 10 at 10.) The Court is not persuaded. The FAC explains that Howmedica's product warnings were inadequate because they failed to apprise Plaintiff that, when the four devices were used together, they "could cause metal cast-off, fretting, corrosion and significant metal toxicity." (Doc. No. 8 at ¶ 38.) This allegation gives Howmedica sufficient notice of Plaintiff's claim to satisfy Rule 8(a), and Howmedica does not allege that Plaintiff failed to plead any of the elements of her failure to warn claim. The Court accordingly denies Howmedica's motion to dismiss this claim.

### C. Strict Liability–Design Defect

Plaintiff's next claim alleges that Howmedica's four devices contained design defects, and asserts strict liability. However, as Howmedica correctly argues, "the entire category of medical implants available only by resort to the services of a physician are immune from design defect strict liability" under California law. Artiglio v. Superior Court, 22 Cal. App. 4th 1388, 1397 (1994); see also Brown v. Superior Court, 44 Cal. 3d 1049, 1061 (1988); Trejo v. Johnson & Johnson, 13 Cal. App. 5th 110, 146 (2017); Hufft v. Horowitz, 4 Cal. App. 4th 8, 18 (1992). Plaintiff made no argument defending its strict liability design defect claim in its opposition brief. The Court accordingly dismisses this claim with prejudice.

### D. Strict Liability–Manufacturing Defect

Plaintiff's final claim alleges that Howmedica's devices contained unspecified manufacturing defects that prevented the devices from "maintain[ing] structural integrity" when "used together," and asserts strict liability. (Doc. No. 8 at ¶ 57(b).) Under California law, a "manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that

causes injury to a human being." Anderson, 53 Cal. 3d at 994 (quoting Greenman v. Yuba Power Prods., Inc., 59 Cal. 2d 57, 62 (1963)).

> A product has a manufacturing defect if it differs from the manufacturer's intended result or from other ostensibly identical units of the same product line. [Barker, 20 Cal.3d at 429.] In other words, a product has a manufacturing defect if the product as manufactured does not conform to the manufacturer's design. [In re Coordinated Latex Glove Litigation, 99 Cal. App. 4th 594, 607 (2002).] A manufacturing defect was a legal cause of injury only if the defect was a substantial factor in producing the injury. (Soule v. General Motors Corp., 8 Cal. 4th 548, 572 (1994).]

Garrett v. Howmedica Osteonics Corp., 214 Cal. App. 4th 173, 190 (2013); accord Tapia v. Davol, Inc., 116 F. Supp. 3d 1149, 1157 (S.D. Cal. 2015).

Howmedica argues that Plaintiff's manufacturing defect claim should be dismissed because the FAC fails "to identify and explain how the implants either deviated from their intended design or from other seemingly identical models." (Doc. No. 10 at 12.) Plaintiff argues that it "is inconceivable that [Howmedica's] products were designed to corrode and release metals into Plaintiff," and thus she does not have to identify any particular manufacturing non-conformity in order to state a claim for relief. (Doc. No. 13 at 5–6.)

The Court agrees with Howmedica. The FAC alleges that Howmedica's devices were defective when used in tandem, but provides no allegations that any component contained a non-conformity when it exited the manufacturing process. If a product cannot be safely used together with foreseeably related products, the product has a <u>design</u> defect. To allege a <u>manufacturing</u> defect, a plaintiff must show that "the product as manufactured does not conform to the manufacturer's design." Garrett, 214 Cal. App. 4th at 190. Because the FAC does not specifically identify how any of devices implanted in Plaintiff's hip differed from their design, the FAC fails to state a manufacturing defect claim.

## Conclusion

The FAC adequately alleges all of the elements required to state claims for products negligence and inadequate product warnings. The Court accordingly denies Howmedica's request to dismiss Plaintiff's first and second causes of action. However, Plaintiff's strict liability design defect claim is barred as a matter of law, and the Court accordingly

8

dismisses Plaintiff's third cause of action with prejudice. Finally, the Court agrees with Howmedica that Plaintiff's fourth cause of action asserting strict liability for manufacturing defects is inadequately pled, and dismisses that claim. Because Plaintiff could cure the defects in its fourth cause of action by identifying specific manufacturing non-conformities in Howmedica's devices, the Court will grant Plaintiff leave to amend. If Plaintiff wishes to file a Second Amended Complaint, she must do so on or before **February 16, 2018**.

**IT IS SO ORDERED.**

DATED: January 16, 2018

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT